UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| COLUMBIA MEDICAL CENTER OF ARLINGTON SUBSIDIARY, L.P., *et al*, | § § § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 4:24-cv-00080-O |
| HIGHMARK INC. d/b/a HIGHMARK BLUE CROSS BLUE SHIELD, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion to Dismiss (ECF No. 8), filed on April 1, 2024; Plaintiffs' Response (ECF No. 16), filed on May 6, 2024; and Defendant's Reply (ECF No. 18), filed on May 20, 2024. Having considered the briefing and applicable law, the Court **DENIES** Defendant's Motion to Dismiss.

**I.    BACKGROUND**[1]

This is a dispute between a group of medical care providers and a health insurance company over reimbursement for care provided to four patients. Columbia Medical Center of Arlington Subsidiary, L.P. d/b/a Medical City Arlington, Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P. d/b/a Medical City Fort Wort, Columbia Medical Center of Plano Subsidiary, L.P. d/b/a Medical City Plano, and Columbia Medical Center of McKinney Subsidiary, L.P. d/b/a Medical City McKinney (collectively, "Plaintiffs") are a group of acute care hospitals in North Texas that provide medically necessary services to the greater Dallas/Fort Worth metropolitan

---

[1] Unless otherwise noted, the facts recited herein are drawn from Plaintiffs' Original Complaint. *See generally* Pls.' Compl., ECF No. 1.

1

community. Defendant Highmark Inc. d/b/a Highmark Blue Cross Blue Shield ("Defendant") is a health insurance company that is a licensee of the Blue Cross and Blue Shield Association and is licensed to offer Blue Cross and Blue Shield ("BCBS") branded health plans in Pennsylvania.

Plaintiffs contracted with non-party Blue Cross Blue Shield of Texas ("BCBSTX") through the Hospital Agreement for PPO/POS Network Participation effective November 1, 2016 (as amended, the "Agreement"). The Agreement outlines the specific terms and conditions under which Plaintiffs must treat patients—or subscribers—with BCBS health plans. Plaintiffs contend that the Agreement broadly applies to the treatment provided to any patients enrolled in a BCBS health plan, including patients who have health plans through another state's BCBS licensee other than BCBSTX, such as Defendant. In return, the Agreement entitles Plaintiffs to payment at specified rates for providing medically necessary services to a subscriber.

When Plaintiffs treat a subscriber with a BCBS-branded health plan administered or underwritten by a BCBS licensee other than BCBSTX, Plaintiffs request payment through the BlueCard Program. Under the BlueCard Program, Plaintiffs submit claims to BCBSTX for services provided to a patient. BCBSTX then reviews the claim and forwards it to the BCBS health plan that insures the subscriber or administers the group plan (known as the "Home Plan"). The Home Plan that insures the patient either denies or approves payment, and BCBSTX then transmits the Home Plan's decision and payment to the patient. The payment rates specified in the Agreement between Plaintiffs and BCBSTX govern the amount Plaintiffs are entitled to be reimbursed for the services provided to a subscriber, regardless of whether that subscriber is a participant in a BCBSTX health plan or another state's BCBS health plan.

From 2019 to 2020, Plaintiffs allege they provided medically necessary care to four subscribers to benefit plans governed by ERISA and administered by Defendant. These patients

are referred to as T.W., T.G., B.R., and J.J. (collectively, the "Subscribers"). Upon admission to Plaintiffs' hospitals, each patient signs a form—often referred to as the Conditions of Admission—containing an assignment of the patient's health insurance benefits, including an assignment of rights, to Plaintiffs. This assignment entitles Plaintiffs to enforce the terms of the Subscribers' health plans under 29 U.S.C. § 1132(a)(1)(B). According to Plaintiffs, the care provided to the Subscribers was covered by the Subscribers' plans with Defendant, yet Defendant wrongfully denied repayment for the care Plaintiffs provided to the Subscribers. Plaintiffs contend that this wrongful denial breached the Subscribers' health plans. In making these allegations, Plaintiffs contend they have standing to sue for the purported wrongful denial of payment through the Subscribers' assignments of benefits and rights via the Conditions of Admission that the Subscribers executed upon admission to Plaintiffs' hospitals.

Plaintiffs sued Defendant seeking reimbursement in the amount of $268,121.72 for the care provided to the Subscribers, asserting three causes of action: failure to comply with health benefit plan in violation of ERISA (Count I), breach of contract (Count II), and breach of contract for plans not subject to ERISA (Count III). Defendant moved to dismiss Counts I and III under Rule 12(b)(1) of the FRCP for lack of standing and Count II under Rule 12(b)(6) of the FRCP for failure to state a claim.[2]

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A case is properly dismissed based on a plaintiff's failure to establish subject matter jurisdiction "when the court lacks the statutory or

---

[2] Def.'s Mot. to Dismiss 6, ECF No. 8.

constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008). "Federal courts must resolve questions of jurisdiction before proceeding to the merits." *Ashford v. United States*, 463 F. App'x 387, 392 (5th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 283 & n.6 (5th Cir. 2011)). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the first principle of federal jurisdiction." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998) (quotation and citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). As such, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citation omitted).

The Court may consider matters outside the pleadings and attachments thereto in resolving a motion for lack of subject-matter jurisdiction under Rule 12(b)(1). *Vinzant v. United States*, No. 2:06-cv-10561, 2010 WL 1857277, at *3 (E.D. La. May 7, 2010) (FTCA case) (citing *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)); *Allen v. Schafer*, No. 4:08-cv-120-SA-DAS, 2009 WL 2245220, at *2 (N.D. Miss. July 27, 2009) ("It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts.") (citing *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986)). Specifically, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

To challenge subject matter jurisdiction under Rule 12(b)(1), a party can make either a facial or factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A 12(b)(1)

4

motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the pleading's allegations, presuming them to be true. *Id.* If a defendant makes a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits and testimony, the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Kling*, 60 F.4th at 284 (internal citation and quotation marks omitted). In a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Further, in a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

In this case, Defendant fails to submit any evidence to support its 12(b)(1) motion and instead points to the face of the complaint. Because Defendant has made a facial attack on the Court's subject matter jurisdiction, the Court must review the sufficiency of the pleading's allegations and presume each to be true. *See Paterson*, 644 F.2d at 523. Lending support to the Court's determination is the analysis from a previous opinion out of this district that addressed a similar argument to the one being made here. *E.g.*, *Texienne Physicians Med. Ass'n, PLLC v. Health Care Serv. Corp.*, No. 3:22-CV-0591-G, 2023 U.S. Dist. LEXIS 59743, at *10–13 (N.D. Tex. 2023) (Fish, J.). In *Texienne*, the defendant health insurance company filed a 12(b)(1) motion arguing that dismissal for lack of standing was warranted because "[plaintiff] baselessly assert[ed] that it obtained assignments of benefits in its ordinary course of business, without providing information about who assigned these rights, the scope of the assignments, or the language of the assignments." *Id.* at *10–11 (citation and internal quotations omitted). The *Texienne* court construed the health insurance company's argument in that case to be a facial attack under 12(b)(1).

5

*Id.* at *6, *12–13. The Court fails to identify any material distinction between the health insurance company's argument in *Texienne* and Defendant's argument here.[3]

### B. Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than

---

[3] *See* Def.'s Mot. to Dismiss 5, ECF No. 8.

conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelsius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

### III. ANALYSIS

#### A. Standing

The Court begins with standing. Defendant contends that Plaintiffs fail to adequately allege that they possess valid assignments of any members' rights under any members' health plans or insurance policies such that they can bring these causes of action.[4] Defendant claims that Plaintiffs' complaint simply includes a "bare-bones allegation" that (1) each patient signs a form including an assignment of benefits without providing information concerning who assigned Plaintiffs these rights and (2) under which health benefit plan or policy, the scope of the purportedly assigned legal rights, or any language of the purported assignments.[5] Without this, Defendant argues that Plaintiffs have not plausibly alleged a valid assignment and therefore lack standing.[6] In their response to Defendant's motion to dismiss, Plaintiffs assert that by pleading receipt of an assignment of benefits from the Subscribers and the right to enforce the terms of the Subscribers' health plans, Plaintiffs have met their pleading burden to the claims asserted in their Original Complaint.[7]

The Fifth Circuit has held that "standing to bring an action founded on ERISA is a 'jurisdictional' matter," *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006), and "is subject to

---

[4] Def.'s Mot. to Dismiss 5, ECF No. 8
[5] *Id.*
[6] *Id.*
[7] Pls.' Resp. to Def.'s Mot. to Dismiss 7-8, ECF No. 16

challenge through Rule 12(b)(1)," *Lee v. Verizon Commc'ns., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). Therefore, Defendant's motion to dismiss for lack of standing is properly analyzed under Rule 12(b)(1). *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002).

"It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Empl. Health Care*, 426 F.3d 330, 333-34 (5th Cir. 2005). "[A] health care provider who has a valid assignment from the plan participant of beneficiary has derivative standing to bring a cause of action to recover benefits from an ERISA-governed [] plan." *Tango Transport v. Healthcare Financial Services LLC*, 322 F.3d 888, 889 (5th Cir. 2003). "In short, although '[h]ealthcare providers may not sue in their own right to collect benefits under an ERISA plan,' they 'may bring ERISA suits standing in in the shoes of their patients' by showing they have received assignments of rights of their patients." *Electrostim Med. Servs., Inc. v. Health Care Servs. Corp.*, 614 F. App'x 731, 742 (5th Cir. 2015) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015)). The Fifth Circuit appears to favor granting derivative standing to health care providers. *See Tango Transp.*, 322 F.3d at 894 (noting that "denying derivative standing to health care providers would harm participants or beneficiaries").

Notwithstanding Defendant's contentions, the Court does not need to determine the exact nature and scope of the assignments at this stage. *See Texienne*, 2023 U.S. Dist. LEXIS 59743, at *12 (holding "the court does not need to determine the scope of the assignments" at the 12(b)(1) motion to dismiss stage); *see also Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-2355-G, 2017 U.S. Dist. LEXIS 178253, at *4–5 (N.D. Tex. Oct. 27, 2017) (holding that

determining the "exact nature and scope" of ERISA assignments is not necessary for a facial challenge to the plaintiff's standing). Nor do Plaintiffs need to attach any of the assignments. *See Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*, No. 3:11-cv-02487-L, 2012 WL 3030376, at *4 (N.D. Tex. July 25, 2012) (provider not required to come forward with copies of every executed assignment to establish standing in the face of a 12(b)(1) facial challenge). Plaintiffs allege in their complaint they are entitled to enforce the terms of the Subscribers' plans as the Subscribers' assignees, and that each patient signs a form that includes an assignment of the patient's health insurance benefits, including an assignment of rights, to Plaintiffs.[8] Furthermore, Plaintiffs specifically pled they have standing to sue through the Subscribers' assignments of benefits and rights via the forms the Subscribers signed upon admission to Plaintiffs' hospitals.[9] *See Lone Star 24 Hr ER Facility, LLC v. Blue Cross & Blue Shield of Tex.*, No. SA-22-CV-01090-JKP, 2023 WL 5729947, at *4 (W.D. Tex. Sep. 5, 2023) ("To withstand a standing challenge, [a] healthcare provider must simply allege that it required all patients to execute an assignment of benefits prior to receiving healthcare services, and it had the right to enforce the terms of the subject insurance plans and recover the benefits due under the plan.") (collecting cases); *see also Texienne*, 2023 U.S. Dist. LEXIS 59743, at *10-13.

In addition, other courts in this district have found similar allegations to Plaintiffs' sufficient to withstand a 12(b)(1) motion to dismiss for lack of standing. *See N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 301 (S.D. Tex. Mar. 2, 2011) (abrogated on other grounds); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.* (*Innova I*), 995 F. Supp. 2d 587, 599 (N.D. Tex. 2014) (O'Connor, J.). In *N. Cypress*, the court determined the plaintiff's allegation that "it obtains an assignment of rights from each patient" was sufficient

---

[8] Pls.' Compl. ¶ 64, ECF No. 1.
[9] *Id.* at ¶ 67.

to withstand a 12(b)(1) standing challenge. 782 F. Supp. 2d at 301. Like the provider in *N. Cypress* who pled that "it obtains an assignment of rights from each patient," Plaintiffs here pled they obtain a form from each patient upon admission to the hospitals that includes an assignment of rights.[10] *See id.* In *Innova I*, the providers alleged they required all patients to execute an assignment of benefits form prior to receiving healthcare services, and that they received an assignment of benefits from the patients. 995 F. Supp. 2d at 599. Additionally, the providers in *Innova I* alleged that they had the right to enforce the terms of the plans and recover the benefits due under the plans. *Id.* The *Innova I* court held that the providers adequately alleged standing as an assignee of the ERISA and non-ERISA plans. *Id.* Like the providers in *Innova I*, Plaintiffs alleged that each patient signs the Conditions of Admission that includes an assignment of the patient's health insurance benefits.[11] *See id.* Also like the providers in *Innova I*, Plaintiffs alleged that they have standing to sue under the assignments they received via the Conditions of Admission from the patients upon admission to Plaintiffs' hospitals.[12] *See id*; *see also Encompass Office Solutions, Inc.*, 2021 WL 3030376, at *4 (holding allegations in complaint alleging plaintiff "possesses . . . Assignments of Benefits from each patient on behalf of whom [plaintiff] asserts claims herein" sufficient to establish standing based on assignment).

Taking Plaintiffs' allegations in the complaint as true, the Court finds that Plaintiffs' allegations are sufficient to withstand a 12(b)(1) facial attack at this stage. Accordingly, the Court **DENIES** Defendant's 12(b)(1) motion to dismiss Counts I and III.[13]

---

[10] *Id.* at ¶ 64.
[11] *Id.*
[12] *Id.* at ¶ 67.
[13] In its motion, Defendant also states that there is a distinction between an assignment that confers the right to merely receive benefits and an assignment that confers the right to sue to recover those benefits. Def.'s Mot. to Dismiss 7, ECF No. 8. Defendant fails to recognize that the right to receive benefits necessarily includes the right to sue to recover those benefits. *See Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 948–49 (E.D. Tex. 2011) ("[D]erivative standing does not require express authorization to

### B. Breach of Contract

Defendant moves to dismiss Count II under Rule 12(b)(6) for failure to state a claim citing two reasons.[14] First, Defendant argues there is no valid contract between Plaintiffs and Defendant because the contract that has allegedly been breached is between Plaintiffs and non-party BCBSTX.[15] Next, Defendant argues that even if a valid contract did exist, Plaintiffs fail to allege specific terms of the contract that were breached, and thus cannot sustain a breach of contract claim.[16] In its response to Defendant's motion to dismiss, Plaintiffs do not dispute that the contract is between Plaintiffs and non-party BCBSTX, but instead claim that Defendant impliedly assumed the obligations of the contract as an affiliate of BCBSTX.[17] Plaintiffs allege that when an affiliate accesses the benefits of the Agreement, they agree to be bound by the Agreement. Plaintiffs go on to state that they have sufficiently pled the terms of the contract that were breached.[18] The Court will address Defendant's arguments in turn.

A contract generally only binds the parties who enter it. *BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "[T]he assignee of a contract is not responsible for the assignor's obligations unless he expressly or impliedly assumes them." *NextEra Retail of Tex., LP v. Invs. Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Plaintiffs do not allege that Defendant

---

sue and . . . an 'assignment of the right to payment is enough to create standing. . . . This is because '[a]n assignment to receive payment of benefits necessarily incorporates the right to seek payment. [T]he right to receive benefits would be hollow without such enforcement capabilities.'") (quoting *Conn. State Dental v. Anthem Health Plans*, 591 F.3d 1337, 1352 (11th Cir. 2009)) (cleaned up); *Electrostim Med. Servs., Inc.*, 614 Fed. App'x at 742 (noting the plaintiff could sue to recover benefits or rights as long as it received a valid assignment from a plan participant or beneficiary); *Spring E.R. LLC v. Aetna Life Ins. Co.*, No. H-09-2001, 2010 WL 598748, at *4 (S.D. Tex. 2010) (holding that all that is required to establish subject matter jurisdiction is the possibility of direct payment).

[14] *See* Def.'s Mot. to Dismiss 8, ECF No. 8.
[15] *Id.*
[16] *Id.*
[17] Pls.' Resp. to Def.'s Mot. to Dismiss 9–11, ECF No. 18.
[18] *Id.* at 12.

expressly assumed any obligations under the Agreement, so the Court must determine whether Defendant impliedly assumed the obligations of the Agreement. "An implied assumption of obligations may arise when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched." *Id.* at 228 (internal quotations omitted).

Plaintiffs allege that Defendant is an affiliate of BCBSTX. The Agreement allows for affiliates access to the benefits of the Agreement, such as the favorable in-network reimbursement rates. Defendant authorized care in two of the claims at issue.[19] At least one other court in the Fifth Circuit has held that this weighs in favor of finding that an affiliate impliedly assumed the obligations of a contract between a healthcare provider and a non-party insurance company. *See St. David's Healthcare P'ship, L.P., LLP v. Anthem Blue Cross Life & Health Ins. Co.*, No. 1-23-CV-00591-ADA, P. 13-15 (W.D. Tex. Opinion dated December 27, 2023) (affiliate's pre-authorization of payment on two of the claims at issue weighed in favor of finding affiliate impliedly assumed liability on the contract between provider and non-party insurance company). Furthermore, Defendant processed the claims at issue and communicated with the Plaintiffs regarding those claims. The Court agrees with Plaintiffs and believes Defendant's actions make it at least plausible that Defendant impliedly assumed liability on the Agreement; therefore, dismissal on these grounds is not appropriate at this stage.

Next, the Court addresses Defendant's argument that Plaintiffs fail to allege specific terms of the contract that were breached. Under Texas law, the elements of breach of contract are "'(1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach.'" *Encompass*

---

[19] Pls.' Compl. ¶¶ 39, 50, ECF No. 1.

*Office Solutions, Inc.*, 2021 WL 3030376, at *8 (quoting *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.)). "To state a plausible breach of contract claim a plaintiff must allege which provision of an identified contract has been breached." *Davis v. Wells Fargo*, No. 3:19-cv-2444-M-BN, 2020 U.S. Dist. LEXIS 87592, at *14 (N.D. Tex. Apr. 23, 2020); *Baker v. Great N. Energy Inc.*, 64 F. Supp. 3d 965, 972 (N.D. Tex. 2014) ("This Court and others throughout this Circuit have consistently indicated that, as a general rule, 'a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant'").

The Court looks to *Electrostim Med. Servs. v. Health Care Servs.* to guide its opinion. *See* 614 Fed. App'x 731, 739 (5th Cir. 2015); *see also Innova Hosp. San Antonio, L.P. v. Blue Cross Blue Shield of Ga., Inc.* (*Innova II*), 892 F.3d 719, 732 (5th Cir. 2018) ("*Electrostim* directly addresses pleading requirements in an ERISA case involving a non-ERISA breach-of-contract claim[]."). In *Electrostim*, the Fifth Circuit held that a provider had sufficiently identified a specific provision in a contract when the provider alleged the insurance company breached "the provision obligating [the insurance company] to pay [the provider's] claims for covered products and services." *See* 614 Fed. App'x at 739. In the complaint, Plaintiffs state that they are entitled to be paid specified rates for the provision of medically necessary services to a subscriber, the services provided by the Plaintiffs involving the claims at issue were covered under the terms of the agreement, the total amount owed, and that Defendant breached by failing to pay for the services.[20] The Court believes this is enough information to sufficiently identify what provision Plaintiffs are alleging has been breached at this stage. Namely, the provision governing Plaintiffs' entitlement to be paid specified rates for the provision of medically necessary services to a Subscriber. This is

---

[20] *See* Pls.' Compl. ¶¶ 71–74, ECF No. 1.

similar to the allegation put forth by the provider in *Electrostim* that was held to be sufficient by the Fifth Circuit. *See id.*

Furthermore, the Plaintiffs' allegations are similar to the ones held sufficient to survive a 12(b)(6) motion in *Innova II*, another Fifth Circuit case. *See* 892 F.3d at 732. In *Innova II*, the hospital alleged the existence of valid contracts, performance by the hospital, breach of the contracts by the insurers, and damages in the form of underpayment or non-payment sustained as a result of the breach. *See id*. In similar fashion, Plaintiffs alleged the existence of valid contracts, performance by the Plaintiffs in the form of providing medically necessary services to each of the Subscribers, breach of the Agreement by the Defendant by failing to pay for the medically necessary care provided, and damages to the tune of $268,121.72 in the form of non-payment sustained as a result of the breach.[21] *See id*; *see also Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. H-15-0297, 2015 U.S. Dist. LEXIS 77373, at *13 (S.D. Tex. June 16, 2015) (finding a plaintiff's breach of contract claim was sufficiently pled even though the defendant argued that the plaintiff failed to identify the specific contract terms that were breached, when the complaint alleged that contracts provided for reimbursement of medical expenses at usual and customary rates, provided the amount that was allegedly owed, and that the plaintiff received less than the amount it was owed).

Defendant cites to *Baker* and *Davis* to support its argument.[22] Both cases are distinguishable from the present case. Unlike the party asserting a breach of contract claim in *Baker* who failed to even state an amount that was due under the contract or how the other party breached, Plaintiffs specified the amount owed as well as how Defendant breached.[23] *See* 64 F.

---

[21] *See id.*
[22] *See* Def's Mot. Dismiss 9–10, ECF No. 8.
[23] Pls.' Compl. ¶¶ 70–74, ECF No. 1.

14

Supp. 3d at 972. In *Davis*, the plaintiffs did not identify the contract that forms the basis of their breach of contract claim. *See* 2020 U.S. Dist. LEXIS 87592, at *14. That is not the case here. Plaintiffs point directly to the contract that forms the basis of the breach of contract claim—the Agreement.[24]

Accordingly, the Court determines that Plaintiffs sufficiently plead a plausible claim at this stage. Defendant's 12(b)(6) motion to dismiss Count II is therefore **DENIED** in this regard.

### C. Request for a Jury Trial

Finally, Defendant moves to strike Plaintiffs' jury demand. The Court agrees with Defendant that there is generally no right to a trial by jury for claims under ERISA. *See Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 629 (W.D. Tex. 2013) ("There is typically no right to a jury trial for claims under ERISA, because ERISA claims generally sound in equity rather that in law."); *see also Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) ("We have held, as have the majority of the other circuits, that ERISA claims do not entitle a plaintiff to a jury trial."). However, Plaintiffs only demand a trial by jury "*for all claims for which a jury is available*,"[25] which necessarily excludes the claims arising under ERISA. Plaintiffs' other claims are both breach of contract claims. Jury trials are available for breach of contract claims in Texas. *See, e.g.*, *Marrufo v. Couch*, No. MO:19-CV-00064-DC, 2022 U.S. Dist. LEXIS 15597, at *6 (W.D. Tex. Jan. 27, 2022) (affirming jury award in Texas breach of contract case). Thus, the Court denies Defendant's motion to strike Plaintiffs' jury demand.

### IV. CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss and Motion to Strike. Plaintiffs have sufficiently pleaded valid assignments from the Subscribers to establish standing to

---

[24] *Id.*
[25] Pls.' Compl. 19, ECF No. 1 (emphasis added).

15

survive a 12(b)(1) motion. Likewise, Plaintiffs have also sufficiently pleaded the existence of a contract between Plaintiffs and Defendant to survive a 12(b)(6) motion at this stage. Lastly, Plaintiffs have only requested a jury for the claims in which a jury is available.

    **SO ORDERED** on this **18th day** of **September, 2024**.

                                Reed O'Connor
                              **UNITED STATES DISTRICT JUDGE**